# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

RACHAEL LYNN BRICENO,

                    Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

                    Defendant.

No. 6:16-CV-00737-MC

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

       Plaintiff, Rachael Lynn Briceno, brings this action for judicial review of the Commissioner of Social Security's decision denying her application for Supplemental Security Income and Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On July 24, 2012, Ms. Briceno filed an application for Supplemental Security Income and Disability Insurance Benefits. After a hearing, an Administrative Law Judge determined that Ms. Briceno was not disabled under the Social Security Act. Ms. Briceno now contends that the Administrative Law Judge erred in (1) finding her testimony to be less than credible, (2) translating the relevant medical opinion evidence into a hypothetical posed to the Vocational Expert, and (3) rejecting statements made by her Vocational Rehabilitation Counselor. Because the Commissioner of Social Security's decision is based on proper legal standards and supported by substantial evidence, it is AFFIRMED.

**STANDARD OF REVIEW**

The reviewing court shall affirm the decision of the Commissioner of Social Security ("Commissioner") if her decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the Administrative Law Judge ("ALJ"). *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the ALJ found that Ms. Briceno was not disabled. He first determined that Ms. Briceno remained insured for Disability Insurance Benefits ("DIB") until June 30, 2010. Tr. 20.[1] Next, at step one of the sequential evaluation, the ALJ found that Ms. Briceno had not engaged in substantial gainful activity since April 1, 2009, the alleged onset date

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

of disability. Tr. 20. At step two, the ALJ determined that Ms. Briceno had the following severe impairments: mood disorder (unipolar depression versus bipolar II disorder); anxiety disorder (posttraumatic disorder versus social anxiety disorder); learning disorder; and borderline intellectual functioning. Tr. 20. At step three, the ALJ found that Ms. Briceno did not have an impairment or combination of impairments that met or medically equalled the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.

Before moving to step four, the ALJ found that Ms. Briceno had the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. Tr. 23. Specifically, the ALJ found that Ms. Briceno was limited to simple, routine work tasks with short instructions, a predictable work environment without frequent changes in work processes or setting, only brief and structured interactions with coworkers, no travel outside of the workplace as part of the job, no fast-paced production work or persuasive communication, no close contact with the public, and, ideally, involvement with only a small number of familiar coworkers. Tr. 23. At step four, relying on the testimony of a Vocational Expert, the ALJ found that Ms. Briceno could perform her past relevant work as a cleaner/housekeeper. Tr. 27. Finally, having determined that she could perform past relevant work, the ALJ concluded that Ms. Briceno was not disabled and therefore did not qualify for benefits. Tr. 27-28.

Ms. Briceno challenges the ALJ's non-disability determination on three grounds. First, she argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discrediting her symptom testimony. Pl. Br. 10. Second, she argues that the hypothetical posed to the Vocational Expert, and in turn the RFC, failed to reflect the full extent of her mental limitations as described in the medical opinion testimony credited by the ALJ. Pl.

Br. 9.  Finally, Ms. Briceno argues that the ALJ improperly rejected relevant testimony by her Vocational Rehabilitation Counselor.  Pl. Br. 10.  The Court addresses each objection in turn.

## I. __Subjective Symptom Testimony.__

Ms. Briceno first argues that the ALJ failed to provide clear and convincing reasons for discrediting her symptom testimony.  An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ, however, is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).  In assessing credibility, the ALJ "may consider a wide range of factors." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014).  These factors include "ordinary techniques of credibility evaluation," as well as the claimant's daily activities, objective medical evidence, treatment history, and inconsistencies in testimony.  *Id.* at 1163.  An ALJ may also consider the effectiveness of a course of treatment and failure to seek further treatment.  *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Molina*, 674 F.3d at 1113.

Ms. Briceno testified in relevant part that she is unable to sustain employment because of difficulties learning and remembering how to complete tasks, carrying out tasks in a timely manner, and responding appropriately to supervision due to her social anxiety.  Tr. 23-24, 48, 50-51, 263-64.  The ALJ first discredited Ms. Briceno's testimony with respect to the intensity of each symptom based on three work stoppages unrelated to her mental impairments.  Tr. 24-25.  At the hearing, Ms. Briceno testified that she had been fired or left many jobs due to difficulties learning and adequately completing tasks.  Tr. 44, 46, 48, 60, 63-64.  Contrary to this assertion,

however, Ms. Briceno reported that she "quit" a position at Elmer's because her "hours were cut," not because of her impairments. Tr. 236, 243. Similarly, she reported leaving a housekeeping position after six months "for [a] reason other than medical." Tr. 243. A previous position as a valet also ended because Ms. Briceno tested positive for marijuana. Tr. 24, 61. As the ALJ concluded, these discrepancies "suggest[ ] she over-generalized and overstated her limitations and the reasons for jobs ending in her testimony." Tr. 24. Although the evidence may be susceptible to more than one rational interpretation, it is not this Court's place to substitute its own judgment for that of the ALJ where, as here, he has offered valid reasons supported by substantial evidence. The inconsistencies between Ms. Briceno's testimony and the record are specific and convincing reasons for discrediting her testimony

The ALJ also discredited Ms. Briceno's testimony regarding the intensity of her social anxiety and depression based on substantial improvements with treatment, failure to seek further treatment, and interactions with Social Security Administration staff. While acknowledging conclusory statements from Ms. Briceno's treating mental health provider about doubts as to "what job claimant could hold," the ALJ determined that the record reflected "that [Ms. Briceno's] depression and anxiety are not significantly limiting." Tr. 25, 539. In particular, the ALJ cited medical evidence reflecting sustained mood stabilization in response to anti-anxiety and depression medications, beginning in 2009 and continuing through the alleged period of disability. Tr. 583. This stabilization was both observed and reported by Ms. Briceno during mental status examinations. Tr. 500-01, 505-06, 508, 510, 515, 517, 534-35, 541. The ALJ also noted that Ms. Briceno's failure to seek "a higher level of care with a psychiatrist or any counseling or therapy" suggested that symptoms could not have been as limiting as claimed. Tr. 25. Finally, the ALJ found Ms. Briceno's interactions with a field office employee to be

inconsistent with her alleged level of social anxiety. Tr. 24, 233. Although the interaction arose during the course of a prior claim, Ms. Briceno's alleged disability was the same and the interaction was therefore germane to the question of her credibility. Tr. 236. When considered in combination with the inconsistencies between Ms. Briceno's testimony and the medical record, as well as her failure to seek additional treatment, the staff observation was an acceptable and substantially supported reason for discrediting the testimony.

Lastly, the ALJ discredited Ms. Briceno's testimony regarding her social limitations and inability to complete tasks because she independently completed a Function Report and made inconsistent statements regarding her abilities. The ALJ noted that Ms. Briceno's alleged "cognitive abilities" were not consistent with being able to independently complete a Function Report. Tr. 23. Although Ms. Briceno objected to this inference by noting that her completion of the report had no bearing on the speed at which she could complete tasks, the ALJ did not specifically discredit Ms. Briceno's speed-related testimony, opining more generally on her intellectual capabilities. Tr. 23. To the extent the ALJ discredited Ms. Briceno's testimony regarding expedient completion of tasks based on the Function Report, it would be error, but the error would be harmless because, as detailed above, the ALJ provided alternative specific reasons supported by substantial evidence for discrediting the testimony. The ALJ also noted that Ms. Briceno inconsistently reported whether she could go into public alone, first testifying that she could and then that she could not. Tr. 24, 262, 286. Ms. Briceno's claim that she could not go into public alone, the ALJ further noted, was also inconsistent with her mother's third-party Function Report, which indicated that Ms. Briceno "did not need anyone with her to go places." Tr. 24. The inconsistencies within Ms. Briceno's testimony and—with respect to her

ability to learn and complete tasks—her independent completion of a Function Report are clear and convincing reasons for discrediting her testimony.

## II. **Medical Source Opinions.**

Ms. Briceno next alleges that the ALJ improperly ignored four medical source opinions assessing limitations on her ability to "respond appropriately to supervision." Pl.'s Br. 11-12. At the most general level, "[t]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, she must reasonably account for the limitations described in a medical source opinion or "explicitly reject" the opinion based on specific reasons. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Despite this burden, the ALJ is not required to interpret a medical source opinion in the light most favorable to the claimant. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). If a medical source opinion does not prescribe any specific limitations on a claimant, for example, the ALJ is not required to assume that the medical source intended any limitations to be included. *Id.* at 1222-23. Similarly, to the extent a medical source opinion includes both "recommendations" and "specific imperatives," the ALJ may ignore the recommendations in favor of the imperatives. *Rounds*, 807 F.3d at 1006.

Ms. Briceno contends that the ALJ failed to properly account for the opinion of examining mental health professional Keith Murdock, Ed.S.[2] Mr. Murdock testified, among other things, that Ms. Briceno was a "slow learner," would "best learn new objectives that are broken into clear and simple steps," and that she would benefit from an employer who provided "extra time and patience." Tr. 496. The ALJ incorporated this assessment into the RFC by restricting Ms. Briceno to "simple tasks, short instructions, substantial limits on contacts with

---

[2] The ALJ erroneously referred to Mr. Murdock as "Dr. Murdock." An Education Specialist (Ed.S.) degree is not a doctorate level degree and there is no evidence in the record that Mr. Murdock is a medical doctor.

others, only occasional workplace changes, and no fast paced production." Tr. 25. Contrary to Ms. Briceno's contention, Mr. Murdock never prescribed a specific limitation on her ability to respond to supervision. Pl. Reply Br. 2. Although Mr. Murdock "encouraged" Ms. Briceno's future employer to be "patient" and provide "short intervals of praise and rewards [to] keep her interested and motivated," this was not an imperative and, in any event, did not specifically concern a limitation on Ms. Briceno's ability to heed a supervisor. Tr. 496. The ALJ was not required to assume a limitation and reasonably accounted for Mr. Murdock's opinion.

Ms. Briceno next argues that the ALJ failed to properly account for the opinion of examining psychologist Cheryl Gifford, Ph.D. Dr. Gifford testified, among other things, that Ms. Briceno "is an individual who is easily angered, has difficulty controlling the expression of her anger, and is perceived by others as having a hostile, angry temperament." Tr. 531. The ALJ incorporated these limitations into the RFC by restricting Ms. Briceno to "little contact with others," including her coworkers, and interaction with only "a small number of familiar coworkers." Tr. 23, 26. Once again, contrary to Ms. Briceno's assertion, Dr. Gifford never described a specific limitation on Ms. Briceno's ability to "interact with supervisors" and, under the "recommendations" section of her assessment, made no mention of special supervision. Pl. Br. 12; Tr. 532-33. The ALJ was not required to assume a limitation and reasonably accounted for Dr. Gifford's opinion. Even assuming that the testimony evidenced a clear limitation on Ms. Briceno's ability to handle supervision, the ALJ noted that Dr. Gifford's examination pre-dated Ms. Briceno seeking additional treatment for her depression, which, as the record reflects, resulted in significant mood stabilization. Tr. 26; *see also* Tr. 500-01, 505-06, 508, 510, 534-35, 541 (documenting stabilization). This reason alone, clearly identified by the ALJ and supported by the record, would make reasonable his decision to discount the alleged limitation.

Finally, Ms. Briceno challenges the ALJ's treatment of testimony by John Robinson, Ph.D. and Robert Henry, Ph.D., two non-examining state agency psychological consultants. Dr. Robinson, the initial reviewer, assessed that Ms. Briceno "should not engage with the public on a frequent basis," should participate only in "brief and structured" interactions with coworkers, and would "fare[ ] best in a predictable environment without frequent changes." Tr. 110-11. Although one of Dr. Robinson's check-box responses indicated that Ms. Briceno was "moderately limited" in her ability to "accept criticism and respond appropriately to criticism from supervisors," his narrative response made clear that, while Ms. Briceno would "benefit from a supportive supervisor," there was "*no indication that she requires special supervision*." Tr. 111 (emphasis added). The ALJ addressed the more specific narrative portion and reasonably concluded, based on the totality of Dr. Robinson's assessment, that the opinion did not prescribe a specific limitation on Ms. Briceno's ability to respond to supervision. Tr. 26. On reconsideration, Dr. Henry concurred with Dr. Robinson's opinion and identified no additional limitations. Tr. 120-22. As such, the ALJ reasonably accounted for their opinions.

### III. Lay Opinion Testimony.

Ms. Briceno lastly contends that the ALJ improperly rejected the lay witness testimony of her Vocational Rehabilitation Counselor, Shilo Hester. Pl.'s Br. 15-16. In general, lay witness testimony regarding a claimant's symptoms is "competent evidence . . . [that] cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ may discredit the testimony of a lay witness if she provides "germane reasons." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An "inconsistency with medical evidence," for example, is a germane reason. *Id.* Similarly, a statement by any witness that a claimant is "disabled" or "unable to work" constitutes testimony on an issue "reserved to

the Commissioner" and justifies discrediting the testimony. 20 C.F.R § 416.927(d). The ALJ must not assign any "special significance" to conclusory statements on the ultimate question of disability. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Ms. Briceno alleges that the ALJ failed to offer germane reasons for rejecting Ms. Hester's testimony. Ms. Hester wrote that "[i]n working with Rachel over the past two years, it has become clear that she is not competitively employable." Tr. 575. She added that, "[e]ven with medication, counseling, and support, her low cognitive abilities combined with her mental illness make competitive employment unrealistic." Tr. 575. The ALJ assigned "little weight" to Ms. Hester's opinion because it was a "conclusory statement on an issue reserved to the Commissioner." Tr. 26. This is a reasonable description and germane reason for discrediting Ms. Hester's opinion. The ALJ further discounted the opinion as inconsistent with the medical record and based on stale interactions which had occurred nearly two years prior. Tr. 25-26. In particular, he noted that the medical record showed "substantial stabilization of moods with appropriate medications" in the time since Ms. Hester had last seen Ms. Briceno. Tr. 25, 505, 506, 510. The fact that Ms. Briceno left Ms. Hester two combative messages during this period of improvement, while potentially allowing for a different interpretation of the evidence, does not render the ALJ's interpretation unreasonable given the contrary medical evidence. Tr. 575. The ALJ therefore provided germane reasons for rejecting Ms. Hester's opinion.[3]

---

[3] In her reply brief, Ms. Briceno also attempts to frame Ms. Hester's statement that she lacks "the emotional capacity or ability to control mal-adaptive behaviors to successfully participate in [vocational rehabilitation] services" as a functional limitation. Pl. Reply Br. 5-6. The statement, however, does not concern Ms. Briceno's ability to operate in an employment setting. The ALJ's citation to Ms. Briceno's mood stabilization, moreover, is a sufficient reason for discounting this portion of the opinion. In any event, the RFC already incorporates multiple limitations on Ms. Briceno's ability to interact with coworkers and the public, so any error would be harmless. Tr. 23.

**CONCLUSION**

For the foregoing reasons, the ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 14th day of December, 2017.

/s/ Michael J. McShane
Michael J. McShane
United States District Judge